Opinion by
Henderson, J.,
J. B. Helms was a contractor with the city of Chester for the construction of a sewer. The contract called for security from the contractor for the completion of the work according to the plans and specifications and the defendant trust company undertook to become his surety. It required, however, that Helms indemnify it against liability and he procured McDowell and Robinson to sign his bond to the defendant to save it harmless on account of its suretyship. Helms needed $1,000 to be paid for labor in the execution of his contract. The trust company proposed to lend him this if McDowell and Robinson would sign a note with him. The parties met at the office of the trust company in May, 1901, at which time the trust company became surety on Helms’ contract with the city, McDowell and Robinson entered into an agreement to indemnify the trust company on its undertaking and the trust company loaned Helms $1,000 for which he gave his note with McDowell and Robinson as sureties. At the same time Helms delivered to the trust company a written order in the following form: “Chester, May 1,1901. J. Craig, Jr., Esq., Treasurer of the City of Chester. Dear Sir: I hereby authorize you to pay to the Delaware County Trust, Safe Deposit and Title Insurance Company all moneys due me by the City of Chester on a certain contract for the construction of a sewer on Fourth street west from Ridley Creek to connect with the Caldwell street sewer and any additions to said contract. This order is irrevocable. Yours respectfully, J. Bertram Helms.” The contractor proceeded with the work and during its progress *545 McDowell and Robinson furnished material used therein to the amount of $2,006.90, of which there was due to McDowell $667.15 and to Robinson $1,339.75. Helms made an assignment to the pla’ntiff for the benefit of creditors before the work was accepted by the city and on notice from the trust company McDowell and Robinson furnished a small amount of material to complete the work. An ordinance of the city provides that the amount assessed against the owners of property for the construction of sewers shall be collected from the owners by the contractor constructing the sewer by lien or suit in the name of the city for the use of the contractor and that all liens shall be filed by the city solicitor. The contract between the city and Helms provided as follows: “the said contractor is hereby authorized to collect from each and every owner of lands abutting on the streets above specified, in front of whose lands the said sewer is constructed and against whom assessment may be made by a jury of view to be appointed by the court to make assessments for the cost of the construction of said sewer, such assessment or assessments, and the said contractor hereby agrees to accept the said assessments in payment of the cost of said sewer if the said assessments equal the cost thereof, and in part payment of the said sewer if the cost of the same is greater than the amount of the assessments, in which event, the balance of the cost of constructing said sewer over and above the amount of the assessments shall be paid to the said contractor by said city.” By virtue of the order above quoted the trust company received from ■ the city $4,060.82, the amount of the city’s share of the cost of constructing the sewer and $966 collected by the city solicitor on liens filed by him against property owners. McDowell and Robinson claim a part of this fund in satisfaction of their bills for material furnished to the contractors. Their claim is based upon the allegation that at the time they indemnified the trust company as surety for Helms and signed the note for him for $1,000 it was agreed between Helms, themselves and the president of the trust company, who was acting for the company, that the order given to the trust company for the collection of the money on the contract was, and was intended to be, security *546 not only to the trust company but to them for their indorsements for Helms and for the bills which the latter might contract with them for material to be used in the construction of the work. They offered evidence to sustain this position and this evidence raised the question of fact which was submitted to the jury. The plaintiff denied any agreement that the order was to inure to the benefit of McDowell and Robinson and contended further that the amount collected by the city solicitor on liens against abutting property owners was not covered by the order. The order is not self-explanatory, no consideration is stated and the inducements to its execution are not recited. It is conceded that all the money paid on it did not belong to the trust company. It was competent to show by parol in whose behalf the money was to be paid to that company. It was a material inquiry whether any of it was payable to McDowell and Robinson — in other words, whether the contractor in giving the order and the trust company in accepting it agreed that the fund should be held, first, for the benefit of the trust company and, secondly, for McDowell and Robinson. The jury found upon sufficient evidence that the agreement was that the claims of thé latter should be secured. The trial judge properly overruled the plaintiff’s motion to strike out the evidence relating to the purpose for which the order was given.
There is no denial of the fact that the money received by the trust company from the city solicitor as well as that paid by the city treasurer was received by virtue of the order of May 10. The president of the trust company, who was called by the plaintiff, so testified, and no one up to the time of the completion of the contract questioned the propriety of such payment. This is corroborative of the allegation of the intervening creditors that the order was intended to cover all the payments made on account of the contract. And it is the more probable in view of the fact that the extent of the liability of the city had not been determined at the time the order was given. How much of the improvement would be assessed against the property of abutting owners could only be determined after the report of the viewers. The contract for the *547 construction of the sewer was with the city. The city alone had authority to file a lien. The right of the contractor to proceed on the liens could only be worked out through the city ordinance and the agreement that he should look to the liens for his pay to the extent to which they would recompense him. The actions were prosecuted in the name of the city and the liability of the property owners was to the city and through it to the contractor. That the parties so interpreted the contract is shown by their conduct and this we consider the purport of the order. In any event it would be competent under the circumstances of the case to prove that the paper was intended to cover the whole fund to which the contractor would become entitled under his contract and the jury has found that such was the intention. The plaintiff’s point was properly refused.
The judgment is affirmed.